KEASBEY et al. v. BROOKLYN CHEMICAL WORKS et al.

(Supreme Court, General Term, First Department. January 13. 1893.)

TRADE-MARKS—DESCRIPTIVE WORDS—"BROMO-CAFFEINE."

The name "Bromo-Caffeine," as applied to a preparation composed of bromide of potassium, caffeine, and other ingredients, is descriptive of the general characteristics and composition of the article to which it is attached. and a trade-mark cannot be acquired in such name,

Appeal from special term, New York county.

Action by Henry G. Keasbey and Richard V. Mattison, partners, under the firm name of Keasbey & Mattison, to enjoin the Brooklyn Chemical Works and others from preparing and selling any article in imitation of plaintiff's preparation by the name of "Bromo-Caffeine" or "Bromide-Caffeine." From an order granting a perpetual injunction, defendants appeal. Reversed.

For appeal from order denying preliminary injunction, see 16 N. Y. Supp. 318.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

Taylor & Parker, (Alfred Taylor and Herman Aaron, of counsel,) for appellants.

Jones & Govin, (Wm. G. Choate and Edward K. Jones, of counsel,) for respondents.

VAN BRUNT, P. J. There seems to be no pointed dispute in regard to the facts which were established upon the trial of this case; and it does not seem to be claimed but that the findings of the court set forth all that is necessary for a determination of the rights of the parties to this action. Neither is there any substantial dispute as to the rule of law which is applicable to those facts, but the divergence arises in the determination as to what result should follow from such application. It is conceded that, if the necessary effect of the alleged trade-mark is to inform the reader or hearer of the general characteristics and composition of the thing, it is a name which may be used with equal truth by

any one who makes or offers for sale a thing compounded of the same ingredients, and who desires to express to the public the same facts, and that it is not necessary that it should convey an exact notion of how to combine the articles, or that one reading it would be able to make a like article; also that the coupling together in combination of words which before that had been used apart, and had entered into the common or scientific vocabulary, does not give a right to the exclusive use of such combination, where it is indicative, not of origin, maker, use, and ownership alone, but also of quality and other characteristics. The questions, therefore, which are presented for solution by the facts found in this case, are: Does the trade-mark in question inform the reader or hearer of the general characteristics and composition of the thing to which it is attached? Does it also inform of its quality and other characteristics, or is it indicative only of origin, maker, use, and ownership? Now, the facts found by the court were that the plaintiffs are, and have been since the year 1873, manufacturers of medicines and medical preparations; that in said year the plaintiffs began to manufacture and put upon the market a medicine called "Caffeine;" that in the year 1881 the plaintiffs commenced, and have ever since continued, the manufacture of a secret preparation of caffeine, composed of bromide of potassium, caffeine, and other ingredients; that, in order to distinguish said preparation from all others, and from similar preparations of other manufacturers, and to establish a trade-mark for the same, the plaintiffs originated and applied to the said preparation a new, arbitrary, and fanciful name, which neither described the article nor its ingredients, consisting of the words "Bromo-Caffeine," which had never before been used in medical science to designate or name any other medicine or medical preparation; (this finding being somewhat inconsistent with some that follow;) that preparations similar to the plaintiffs' article, designed and adapted to the same use, have been made and sold by others, including the defendants, by the name of "Hydro-Bromate of Caffeine;" that in 1890 the defendants made a preparation similar to that of the plaintiffs, and intended for the same purposes, to which they applied the name "Bromide Caffeine," which name they subsequently changed to "Bromo-Caffeine," and that the defendants have since used, and are still using, the same name upon such similar preparation; that prior to 1881 bromo-caffeine was the name of a definite, distinct, chemical compound; and that bromine and caffeine were and are, and each of them was and is, an element well known in chemical science, and each had an established place and meaning in the English language; that bromides, prior to 1881, were known to physicians, and were well known to possess certain medicinal properties as sedatives; that bromide of potassium and bromide of sodium were known, and well known to possess certain medical properties as sedatives; that the preparation sold by the plaintiffs under the name of "Bromo-Caffeine" consists of bromide of potassium and caffeine mingled with an effervescing salt and sugar; that it is and was a common practice to prepare medicines in the form of effervescing salts, and that the objective medical ingredients in the plaintiffs' preparation sold under the name of "Bromo-Caffeine" are bromide

of potassium and caffeine; that the active therapeutic ingredients in the defendants' preparations are bromide of sodium and caffeine, and that bromide of sodium and of potassium are what are known as "bromides," and their therapeutic effect is substantially identical. Upon these facts the court found that the plaintiffs have acquired a valid trade-mark in the name of "Bromo-Caffeine," to designate their article of manufacture; and that they are entitled to its exclusive use as a name for the same.

It is urged by the respondents, in support of the judgment appealed from that the term "Bromo-Caffeine," as applied to the plaintiffs' preparation, is not descriptive, and that it is no objection to its validity that it suggests, without describing, the thing, or the ingredients from which it is made, and this contention seems to be based principally upon the ground that "bromo," in medical nomenclature, has no definite meaning, and is not in use; and that, if taken to designate some substance in which bromide enters into its composition, it did not indicate or suggest any particular one of such substances, and that therefore the case at bar was not in any way like the case of Caswell v. Davis, 58 N. Y. 223, which involved the right to a trade-mark in the words "Ferro-Phosphorate Elixir of Calisaya," but is included in the principle decided in the case of Electro-Silicon Co. v. Hazard, 29 Hun, 369. This contention we do not think can be sustained. The finding of the court is that the ingredients which give to the plaintiffs' preparation its medicinal properties, and produce the effects claimed by its use, are bromide of potassium and caffeine, and that bromide of potassium is one of what is known as the class of bromides. Under these circumstances, it is difficult to see why the use of the word "bromo" is not and was not intended to be descriptive of one of the ingredients in the composition manufactured by the plaintiffs, and that such is the necessary result of the use of the word is plainly established by the evidence of Dr. Hamilton, one of the witnesses for the plaintiff. He testified that he knew the medical preparation called "Bromo-Caffeine;" that he had been in the habit of prescribing it for his patients for at least 10 years past; that he did not know what ingredients were contained in it to induce him to recommend it, but he believed it contained bromides and caffeine, and that he understood from its name that it contained bromine, either free or in combination, because "bromo" is the most commonly used word. He further testified that the combination conveyed to his mind the fact that bromide—some sort of bromide—and caffeine were combined; and that bromine, in combination in medicine, is known to be a sedative, and that caffeine, in certain diseases, has also well-known medical properties, in that it acts as a stimulant; and that the name "Bromo-Caffeine" vaguely conveyed to his mind that there was some preparation of bromide and caffeine together, and we think that that is just what the term was intended to convey to the ordinary purchaser of the article, only not vaguely; and the evidence shows that the active constituents of this composition are a bromide and caffeine. It seems to us that it is difficult to get a combination of words which so correctly describes a manufactured article, or rather its active properties, as the one adopted by the plaintiffs. If these words are not

descriptive under this evidence and these findings, it would seem to be impossible to imagine a combination of two words which could be descriptive in case the composition contained other ingredients absolutely unnecessary for the production of the medical result.   The case of Electro-Silicon Co. v. Hazard (above referred to) has no similarity whatever to the case at bar.   In that case it appeared that the preparation, made from an infusorial earth, was first put up by the plaintiffs' predecessor, and sold by them under the name of "Electro-Silican" and also "Silicon" for a number of years; that the words "Electro-Silicon" were not descriptive, although the article contained some silicon in the form of silica or silicic acid, silicon itself not being, and from its nature it being impossible that it ever should become, an article of commerce, as it exists in minute quantities, and is an elementary body closely allied to carbon, and is never found in an uncombined state, but is only a component part of compounds not resembling it in any respect, from which it has been separated in very small quantities to furnish specimens for cabinets; and that, therefore, the word "silicon" was in no way descriptive of the active qualities of the preparation.   This case seems to be entirely distinct in all its essential features from the one at bar.   We are of opinion, therefore, that the plaintiffs failed to establish the right to a trademark in the words "Bromo-Caffeine," and that the judgment should be reversed and a new trial ordered, with costs to appellants to abide event. All concur.